FILED
CLERK
10/27/2015 12:17 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

SVETLANA SHNEYDERSHTEYN-KUVYKIN,

        Plaintiff,

  -against-

iPAYMENT HOLDINGS, INC., CARL GRIMSTAD,

and MARK C. MONACO,

        Defendants.
-----------------------------------------------------------X

**ORDER**
14-CV-4728 (SJF)

FEUERSTEIN, J.

On August 13, 2014, plaintiff Svetlana Shneydershteyn-Kuvykin (plaintiff) filed this action, *pro se*, against defendants pursuant to the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968 against iPayment, Inc. (iPayment), a credit card-processor, and two of its officers (collectively, "defendants). [Docket Entry No. 1]. On July 29, 2015, defendants moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Docket Entry No. 35]. Plaintiff retained counsel, and moved to amend her complaint. *Id.* For the reasons that follow, defendants' motion to dismiss is granted, and plaintiff's motion to amend its complaint is denied.

    I.    FACTUAL BACKGROUND

For purposes of this motion, the Court accepts as true the following allegations found in the complaint. Plaintiff was a member of Allstate Merchant Services, LLC (Allstate). Complaint (Compl.) 3, ¶ 9.[1] Allstate marketed credit card processing services to small and

---

[1] She alleges that she was its sole member. However, the record discloses that her husband, Igor Eric Kuvykin, was also a member and executed contracts on Allstate's behalf.

midsized businesses nationwide, and initially operated as an Independent Sales Organization (ISO) for First Data Merchant Services, Inc. (First Data). Compl. 3, ¶ 10. ISOs provide credit card payment processing services between banks and merchants, and derive a continuing income stream from fees charged to the merchant, for as long as that merchant does business with the ISO ("residual"). *iPayment v. Allstate Merchant Servs., LLC*, No. 650470/2014, slip op. at 1 (N.Y. Sup. Ct. March 5, 2014). ISOs frequently subcontract independent sales agents called "sub-ISOs," who solicit merchants, in exchange for a portion of the residual. *Id.* at 1–2; Compl. 4, ¶ 13. First Data processes the credit card transaction and charges credit card processing fees at a wholesale rate to ISOs, who charge merchants higher retail fees. Compl. 4, ¶ 13.

Defendant iPayment is an ISO, although larger in size than Allstate, which also markets credit card processing services for First Data. Compl. 3, ¶ 11. Defendant Carl Grimstad (Grimstad) is iPayment's chief executive officer and president. Compl. 2–3, ¶ 7. Defendant Mark C. Monaco (Monaco) is its chief executive vice-president and treasurer of iPayment. Compl. 3, ¶ 8.

By the end of the first quarter of 2011, Allstate had a significant book of business, and received more than one million dollars ($1,000,000) in annual residuals. Compl. 4, ¶ 15. In April 2011, iPayment offered to purchase a portion of Allstate's book of business, and for Allstate to operate as its sub-ISO. Compl. 5, ¶¶ 17–18. During negotiations, iPayment represented that it was a solvent business, claimed to have more than one hundred eighty thousand (180,000) merchants under contract, and produced its disclosures filed with the Securities and Exchange Commission (SEC) as evidence of its financial health. Compl. 3, 5,

¶¶ 11, 19. Allstate performed due diligence, and on June and August, 2011, entered into two substantially identical purchase agreements with iPayment (Purchase Agreements). Compl. 5, ¶¶ 20–21.

The June 2011 Purchase Agreement provided that Allstate would transfer to iPayment merchant accounts which represented a residual income stream of one hundred thousand dollars ($100,000) per month, for which iPayment paid Allstate three million six hundred thousand dollars ($3,600,000). Def.'s Ex. E, at 1. The contract obligated Allstate to guarantee this income stream until June 1, 2013, and to make up for any shortfall through transfer payments. *Id.* at 2. Allstate could ensure that it satisfied its monthly one hundred thousand dollar ($100,000) obligation by adding or substituting new merchants, provided that these merchants met the criteria in Exhibit C to the Purchase Agreement. *Id.*

The June 2011 Purchase Agreement also obligated Allstate to submit a specified minimum monthly number of new merchant applications to iPayment for a three (3)-year period. *Id.* at 9. If Allstate did not meet the minimum monthly number, it was required to pay liquidated damages in the amount of one hundred dollars ($100) for every application below the specified minimum number of applications. *Id.* at 10. However, Section 4.12 provided that the minimum monthly requirements would not apply if iPayment "materially changes its internal underwriting rules (provided that such change is unilateral and not the result of the requirements of its sponsor bank)." *Id.*

The August 2011 Purchase Agreement contained identical provisions, except that it obligated Allstate to transfer different merchant accounts, which represented a seventy thousand dollar ($70,000) monthly income stream to iPayment, and required Allstate to guarantee that

income stream until August 2013, in exchange for two million five hundred thousand dollars ($2,500,000). Def.'s Ex. F, at 1–2. The parties also executed an "ISO/MSP Merchant Solicitation Agreement" dated June 1, 2011, which outlined Allstate's obligations as a sub-ISO to iPayment. Def.'s Ex. L.

Initially, Allstate not only performed pursuant to the agreements, but exceeded its minimum requirements for submitting merchant applications to iPayment. Compl. 7, ¶ 28. Initially, iPayment approved ninety percent (90%) of those applications. However, in late 2011, when iPayment unilaterally changed its underwriting rules, and the approval rate dropped to below fifty percent (50%). Compl. 7–8, ¶¶30–32. Plaintiff alleges that defendants implemented the underwriting changes to injure Allstate. Compl. 7–8, ¶¶ 31–36.

iPayment also injured Allstate's business by failing to provide technical support to merchants and altering its protocols. Compl. 9, 10, ¶¶ 37–38, 41–43. Several key iPayment officers and employees, including defendants Grimstad and Monaco, whose employment constituted a "material part of the bargain," also left iPayment, which exacerbated the problem of its worsening service to the merchants. Compl. 9, 10, ¶¶ 39–41; *see* Def.'s Exs. E, F, at 10.

iPayment sent statements to Allstate's merchants requiring them to pay additional fees, which were not set forth in the parties' contractual arrangement. Compl. 11, ¶¶ 44–49. Plaintiff alleges that defendants engaged in this behavior to put Allstate out of business. Compl. 12, ¶¶50–54.

On March 5, 2014, iPayment obtained an injunction against Allstate which prohibited Allstate from violating the non-solicitation provisions of the parties contractual arrangements by "poaching" iPayment's merchants. *iPayment v. Allstate Merchant Servs., LLC*,

No. 650470/2014, slip op. at 4–7 (N.Y. Sup. Ct. March 5, 2014). Allstate filed for Chapter 7 bankruptcy on August 4, 2014. Chapter 7 Voluntary Petition, *In re Apco Merchant Servs., Inc.*, Ch. 7 Case No. 8-14-73607 (Bankr. E.D.N.Y. Aug. 4, 2014).

Plaintiff initiated this matter, *pro se*, on August 13, 2014, alleging a pattern of racketeering activity under RICO, 18 U.S.C. § 1962(c), and a RICO conspiracy, 18 U.S.C. § 1962(a), (b), and (d).[2] Compl. 12–15,15–6, ¶¶ 55–63, 64–67. On September 5, 2014, iPayment obtained a money judgment against Allstate, plaintiff, and her husband in Tennessee state court in the amount of two million one hundred and seven dollars ($2,107,200). *iPayment v. Allstate Merchant Servs., LLC*, No. 14-271-I, slip op. at 10 (Tenn. Ch. Ct. Aug. 1, 2014).

## II. DISCUSSION

### A. Rule 12(b)(6)

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679. The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "Dismissal is appropriate when 'it is clear from the face of

---

[2] Defendants allege that plaintiff's complaint was drafted by Michael Rosoff, an attorney who has been disbarred for federal securities fraud. *See In re Rosoff*, 710 N.Y.S.2d 359, 361 (2000).

the complaint . . . that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SB*, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

B. Plaintiff's RICO Claims

Defendants move for dismissal of plaintiff's RICO claims, arguing (1) that plaintiff lacks standing to bring RICO claims on behalf of Allstate, (2) that plaintiff's complaint fails to satisfy Rule 9(b)'s heightened pleading standard, (3) that plaintiff has not sustained a cognizable RICO injury, and (4) that plaintiff has not sufficiently pleaded any RICO predicate acts. Def.'s Br. 13–21. Defendants also argue that plaintiff failed to plead a RICO conspiracy.

RICO provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it "unlawful for any person to conspire to violate ... the provisions of [subsection (c)]." 18 U.S.C. § 1962(d). "When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F.Supp.2d 225, 236 (E.D.N.Y. 2010) (citing 18 U.S.C. § 1964(c)).

Initially, defendants argue that plaintiff lacks standing under the RICO statute by virtue of the fact that she is a member of the allegedly injured LLC, Allstate. Def.'s Br. 13. Separate from Article III's standing requirement, to satisfy RICO requires a plaintiff to allege: "'(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by

6

the violation.'" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir. 1994) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990)). A sole shareholder in an injured business entity lacks standing to prosecute RICO claims on behalf of the business entity. *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) (citing *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127, 136 (S.D.N.Y. 1988)); *Pappas v. Passias*, 887 F. Supp. 465, 472 (E.D.N.Y. 1995). Here, even assuming, *arguendo*, that iPayment's conduct constituted RICO activity, plaintiff alleges that she suffered an injury because it "destroyed" her business, Allstate. Compl. 15, ¶¶ 62, 63, 67. This is insufficient to confer RICO standing on plaintiff.

Plaintiff also failed to plead fraud with particularity as required by Rule 9(b). "Rule 9(b) is intended 'to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit[.]'" *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). A plaintiff alleging fraud as a RICO predicate act must satisfy Rule 9(b)'s heightened pleading requirements. *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) ("[A]ll allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirement of [Rule 9(b) ].") (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004)); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 230 (S.D.N.Y. 1989) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions . . . .") (quoting *Plount v. American Home Assurance Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987)). To do so, a plaintiff may not rely on

conclusory allegations, but must specify "'in what respects the statements at issue were false.'" *Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 570 (S.D.N.Y. 2009) (quoting *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir.1996)). If a plaintiff has not satisfied these pleading requirements, dismissal is appropriate. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (citing *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).

Here, plaintiff alleges several fraudulent acts by iPayment in changing its underwriting rules, but the complaint does not specify the changes made to its underwriting rules, and it appears that the Purchase Agreements, Section 4.12, actually contemplate unilateral changes by iPayment. *See* Def.'s Exs. E, F, at 10. By itself, therefore, the fact that defendant iPayment, Grimstad, and Monaco implemented these changes, which were allowed under the Purchase Agreement does not suggest fraud.

Similarly and insofar as plaintiff alleges a failure to provide technical support, plaintiff fails to explain with any particularity how iPayment's failure to provide technical support to merchants constitutes fraud, only alleging that iPayment's deficient technical support was connected to the departure of several key employees under what she describes as "murky" circumstances, and alluding to a SEC filing in which iPayment alleged embezzlement by employees. Compl. 9, ¶ 39; *See, e.g.*, *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 540 (S.D.N.Y. 2014).

Plaintiff also claims that iPayment perpetrated a fraud by charging fees to merchants in Allstate's name, but it is undisputed that iPayment and Allstate's relationship vis-à-vis the merchants was fee-based, and Allstate had a subordinate relationship to it as its sub-ISO. Under

these circumstances, the Court cannot infer fraud on the part if iPayment from the face of the complaint. Accordingly, plaintiff's RICO claims against iPayment are dismissed.

### III. MOTION TO AMEND PLEADINGS

Plaintiff has cross-moved to amend her complaint to add state law claims for breach of contract, conversion, breach of implied covenant of good faith and fair dealing, and unjust enrichment. Pl.'s Br. 21; Pl.'s Ex. F, at 15. Rule 15(a) allows a plaintiff to amend her complaint once as a matter of course within twenty-one (21) days after service , and thereafter, only with leave of court or with the adversary's written consent. It further provides that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]his mandate is to be heeded" especially "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (explaining that court abuses its discretion by refusing to allow amendment to a complaint without justification). However, a court may deny leave to amend where the proposed amendments are futile. *E.g.*, *Ganthier v. N. Shore-Long Island Jewish Health Sys.*, 298 F. Supp. 2d 342, 350 (E.D.N.Y. 2004) (citations omitted). The court may treat the proposed amendments as futile if they would not survive a dismissal motion. *A.V. By Versace, Inc. v. Gianni Versace*, S.p.A., 160 F. Supp. 2d 657, 666 (S.D.N.Y. 2001) (citing *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir.2001)). Allstate is not a plaintiff in her proposed amended complaint, and therefore the amendments do not give rise to RICO standing. She proposes to amend her complaint to include state law claims against parties who are all citizens of New York, and over which the Court would decline to exercise supplemental jurisdiction. Accordingly, plaintiff's cross-motion to amend her complaint to add these claims is denied.

IV. CONCLUSION

For the foregoing reasons, defendants' dismissal motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted. Plaintiff's cross-motion to amend her complaint is denied.

**SO ORDERED**.

                                                          s/ Sandra J. Feuerstein\_\_\_\_\_
                                                          Sandra J. Feuerstein
                                                          United States District Judge

Dated: October 27, 2015
       Central Islip, New York